IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JENNY REBECCA NELSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ANDREW SAUL,[1] ) <br> Commissioner, Social Security ) <br> Administration ) <br> ) <br> Defendant. ) | Case No.: 2:18-cv-749-WC <br> [WO] |

## **MEMORANDUM OPINION AND ORDER**

## I.  INTRODUCTION

Jenny Rebecca Nelson ("Nelson" or "Plaintiff") filed a Title XVI for supplemental security income on February 5, 2016, alleging disability beginning on February 5, 2016. R. 10, 250–56. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on July 12, 2017. R. 232, 243–45, 249. Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on July 24, 2018. R. 1–3. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* §205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 10); Gov't's Consent to Jurisdiction (Doc. 11). After careful scrutiny of the record and the parties' briefs, and for the reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*.*" *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. §

3

423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience

5

to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE PROCEEDINGS

Jenny Nelson was 46 years old at the time of the ALJ's decision. R. 105. She lives in a mobile home in Eclectic, Alabama with her husband. R. 39, 304. She has two adult children and two grandchildren. R. 40. She completed high school and attended Truman State where she obtained a nursing assistant certification. R. 41. Her primary complaints are problems with her feet and knees, congestive heart failure, a pinched vertebra in her neck, hypertension, diabetes, asthma, and thyroid problems. Doc. 13; R. 17. In the past, Nelson worked as a nursing assistant in home health care. R. 17. She has not engaged in substantial gainful activity since February 5, 2016. R. 12.

Following an administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since February 5, 2016, the application date[.]" R. 12. At Step Two, the ALJ found that Nelson suffers from the following severe impairments under 20 C.F.R. § 416.920(c): obesity, hypertension, chronic venous insufficiency, and degenerative joint disease of the knees. R.

12. The ALJ also determined that Nelson suffers from the following non-severe impairments: congestive heart failure, asthma, and thyroid problems. R. 13. But the ALJ concluded at Step Three of the analysis that none of Nelson's impairments, nor a combination of her impairments, met or medically equaled the severity of one of those listed in the applicable regulations. R. 14. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(b) except she would be allowed to alternate positions (e.g. from seated to standing) for 1 to 2 minutes each hour. When seated, the claimant would be allowed to elevate her feet at footstool level. She could occasionally balance, crouch, and/or stoop. She should never kneel, crawl, climb ramps/stairs or climb ladders/ropes/scaffolds. The claimant should never push/pull using her lower extremities, bilaterally. She could frequently reach, but only occasionally reach overhead. She should avoid all exposure to unprotected heights and hazardous machinery. She should avoid concentrated exposure to vibration. She should never drive a commercial vehicle. The claimant would miss one to two days of work per month.

R. 15. At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff "has no past relevant work." R. 23. The ALJ next concluded, at Step Five, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 23. Based upon the testimony of the VE, the ALJ identified the following as representative occupations: a "Hand mounter," a "Table worker," and a "Final assembler of optical goods." R. 24. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability [. . .] since February 5, 2016, the date the application was filed." R. 25. Based on these findings, the ALJ denied Ziglar's claims. R. 7.

## V. PLAINTIFF'S CLAIMS

Plaintiff presents one issue for the Court to consider in its review of the Commissioner's decision: Whether the ALJ properly evaluated the Claimant's impairments on her ability to perform sustained work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule as required by SSR 96-8p. Doc. 13 at 6.

## VI. DISCUSSION

### A. The ALJ's Residual Functional Capacity Finding

"[T]he ALJ has the responsibility for determining a claimant's RFC." *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). To determine a claimant's RFC, the ALJ must follow a two-step process. First, she must determine whether there is a physical or mental impairment that could produce the claimant's symptoms. R. 23. Then, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's functional capacity. R. 23.

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). There is no requirement that the RFC assessment "be supported by the assessment of an examining or treating physician." *Id.* at 1055–56. Nor is the ALJ required to "specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does

not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013). But the "ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016). However, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r, Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Reviewing judges "may not make fact-findings, re-weigh the evidence, or substitute [their] judgment for that of the [ALJ]." *Davis-O'Brien v. Astrue*, 415 F. App'x 137, 138 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "Even if the evidence preponderates against the Commissioner's findings, [the reviewing judge] must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004). Here, there is substantial evidence to support the ALJ's finding that Nelson could perform a full range of sedentary work if allowed to elevate her feet at footstool level and alternate positions.

### 1. *The Opinion of Dr. Garnett*

Nelson contends that there was no evidence presented that the Claimant could perform less than a full range of sedentary work even if allowed to elevate her feet at footstool level. Doc. 13 at 8. Instead, she argues that the only evidence presented regarding this issue was the opinion of Dr. Tommy Garnett, Nelson's treating podiatrist, who opined that Nelson's leg should be elevated at waist level when sitting for a prolonged time. Doc.

9

13 at 8. In Alabama, a licensed podiatrist is an acceptable medical source for purposes of establishing impairments of the foot. *James v. Barnhart*, 261 F. Supp. 2d 1368, 1371 (S.D. Ala. 2003). A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal citation omitted). "It is well settled that unless there is good cause shown to the contrary, the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). Good cause exists where "the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241.

"To discount the opinions of a treating physician, the ALJ must set forth on the record explicit, adequate reasons for doing so." *James*, 261 F. Supp. 2d at 1371. Furthermore, those reasons must be supported by substantial evidence. *Hale*, 831 F.2d at 1012. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). And

"conclusory statements . . . to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion." *Kahl v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012).

In determining whether an ALJ's decision is supported by substantial evidence, the court maintains a "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Winschel*, 631 F.3d at 1179 (internal quotation marks and citations omitted). A "reviewing court may not look 'only to those parts of the record which support the ALJ,' but instead 'must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ.'" *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986) (internal citation omitted).

The ALJ assigned partial weight to Dr. Garnett's Medical Source Statement, finding that the Source Statement relied primarily on Nelson's subjective testimony and complaints of pain, as opposed to his objective medical testing and examinations. R. 20. For example, in his Medical Source Statement, Dr. Garnett concluded on May 9, 2016, that Nelson's feet needed to be constantly elevated at waist level when sitting. R. 1333. But when Dr. Garnett evaluated Nelson a week earlier, he reported that Nelson indicated that she was doing "OK," that she had only mild edema and no ecchymosis, that she had a good range of motion, and that her radiograph revealed good alignment and no bone destruction. R. 1339. A month earlier, in April 2016, Dr. Garnett also found that Nelson had only mild edema with no ecchymosis, no erythema or ascending cellulitis, and a good range of motion. R. 1340. He also instructed her to increase her activity to tolerance, as she had previously

11

been limited to light activity due to the Tailor's bunionectomy procedure. R. 1340–41. And the month before that, March 2014, Nelson reported to Dr. Garnett that she was doing better. R. 1341.

The ALJ noted that the Plaintiff rarely takes pain medication for her symptoms and that she reported that her pain levels only rise to a five or six, which is considered moderate pain on a pain scale of one to ten. R. 20. The ALJ further found that Dr. Garnett's "*opinion is not consistent with the claimant's abilities and functioning and is internally inconsistent as he stated she is unable to sustain work, then stated she could do low stress jobs (due to pain)*. R. 23 (emphasis in original). Finally, the ALJ stated that "a determination of disability '100% disabled' is an opinion reserved to the Commissioner of Social Security." R. 23. Accordingly, because substantial evidence shows that Dr. Garnett's opinion was not bolstered by the evidence and inconsistent with his own medical records, which the ALJ explicitly articulated, the ALJ did not err by assigning Dr. Garnett's opinion only partial weight.

### 2. *The Hypothetical Posed to the Vocational Expert*

Nelson asserts that the ALJ did not pose a complete hypothetical to the VE because the hypothetical failed to include the pain associated with Nelson's feet and knees and failed to include that Nelson would be required to take unscheduled breaks during the workday. Doc. 13 at 8. The relevant inquiry here "concerns the fifth step of the sequential evaluation process—whether the Commissioner carried his burden of demonstrating that a significant number of jobs exist in the national economy that [the claimant] can perform." *McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73–74 (11th Cir. 2010). "The ALJ

must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). To do this, ALJs often rely on the testimony of a vocational expert. *See Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 298 (11th Cir. 2011) ("One manner of determining this is for the ALJ to ask a vocational expert hypothetical questions to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy."); *Yates v. Comm'r of Soc. Sec.*, 706 F. App'x 588, 593 (11th Cir. 2017) ("Obtaining testimony from a vocational expert is the preferred means for introducing evidence that there are jobs in the economy that the claimant can perform."). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Carter*, 411 F. App'x at 298. But the hypothetical "need only include the claimant's impairments, not each and every symptom of the claimant." *Yates*, 706 F. App'x at 593. And "the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Id.*

### a.     Feet and Knee Pain

First, the Plaintiff argues that the "ALJ's hypothetical to the vocational expert was not complete because it failed to mention the Claimant's pain associated with her feet and knees." Doc. 13 at 8. The ALJ was not required to include Nelson's allegations of feet and knee pain in the hypothetical, because the ALJ found that these allegations were unsupported by the record. *See Carter*, 411 F. App'x at 298 ("The ALJ properly omitted

13

[claimant's] dizziness, headaches, and vision problems in his hypothetical question because he found these to be unsupported by the record.") The ALJ noted that Nelson has mild degenerative changes in her right knee and moderate degenerative changes in her left knee but found that "the objective medical evidence does not indicate the claimant's conditions impact her ability to ambulate." R. 20. Instead, the ALJ concluded that the "medical evidence of record mostly shows normal gait and ambulation." R. 20. For example, in June 2015, Dr. Johnathan Williams at the UAB Highlands Orthopedic Clinic found that Nelson' s left foot wound was healing well. R. 1492. And though a doctor at the UAB Spain Rehabilitation diagnosed Nelson with osteoarthritis in January 2016, Nelson reported that she had full flexion and extension range of motion and had no instability, and Dr. Powell told her to proceed with activity as tolerated and treated her only with a steroid shot and over the counter medication. R. 1311. When Dr. Garnett conducted a follow-up in May 2016 after a Tailor's bunionectomy, he found that Nelson had a good range of motion, mild edema, and only mild pain. R. 1339. He recommended that she continue activity to tolerance. R. 1339. And in October 2016, though Dr. Garnett determined that Nelson had a contusion in her left foot, he also found that she had no visible fracture, that her CT was negative, that she had only mild edema, and should continue activity to tolerance. R. 1479.

Moreover, the ALJ pointed out that, apart from the times that she was recovering from surgery, Nelson had the ability to cook, clean, and do laundry. R. 21, 42. Nelson also testified that she could drive, do grocery shopping, get herself bathed and dressed, and take care of her family and pets. R. 16, 42, 50–51. Additionally, in an August 2014 function

report, Nelson reported that although her activities are more limited or take longer, she still attends church, spends time with others talking, playing cards, and playing computer games, and can sort and fold laundry. R. 16, 304–10.

Additionally, the ALJ highlighted the fact that Nelson did not always follow through with recommended treatment. For example, after a referral from Dr. Garnett, Nelson visited the Alabama Vein Center in March 2016, seeking treatment for leg pain and vein problems. R. 1321. Dr. Charles Hunt recommended that she undergo endovenous laser ablation (R. 1323), but the ALJ noted that there is no evidence in the record indicating that Nelson ever underwent this treatment. R. 20. At the hearing, Nelson testified that her pain was at least a five or six on the worst days, and that she was prescribed Lortab to take when she needed it. R. 44. But Nelson also testified that she does not take the Lortab very often, as she is worried that it might negatively affect her heart. R. 53.

The ALJ properly rejected Nelson's allegations of feet and knee pain and therefore was not required to include the allegations in the hypothetical to the VE. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("In any event, the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.")

### b. Unscheduled Work Breaks

Next, Nelson argues that:

> "The ALJ's hypothetical to the vocational expert also failed to take into account the Claimant's need to take unscheduled breaks during the work day. Dr. Garnett opined that the Claimant would need to take 2 to 4 unscheduled breaks of at least 30 minutes each before returning to work. Dr. Garnett also opined that the Claimant would likely be absent from work as a result of her

impairments or treatment more than 4 days per month which would not be acceptable to any employer. Accordingly, the ALJ's finding that the Claimant will only miss 1 to 2 days of work per month and further has the ability to perform a limited or reduced range of sedentary work is not supported by substantial evidence."

Doc. 13 at 8. The only reference in the record that Plaintiff would be required to take two to four unscheduled breaks of at last thirty minutes every day can be found within Dr. Garnett's May 9, 2016, Proof of Disability form and Physical Residual Function Capacity Questionnaire. R. 1333.

In considering the absentee issue as a whole, the ALJ noted:

> Although the vocational expert's testimony is inconsistent with the information contained in the [DOT], there is a reasonable explanation for the discrepancy. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT] with the exception of absenteeism and foot elevation. The vocational expert testified that the DOT does not specifically address these limitations. However, he was able to provide responses based on his training, education and work experience.

R. 24; *see Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999) ("when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."). During the hearing before the ALJ, following this exchange between the ALJ and the VE on absenteeism, counsel for Nelson was provided an opportunity to cross-examine the VE. R. 63. Counsel for Nelson asked for clarification on employers' tolerance level for absenteeism of up to four days per month. R. 63. However, no questions were raised regarding the need for unscheduled breaks.

Nelson cites to *Vega v. Commissioner of Social Security* for the proposition that the ALJ's hypothetical was not complete because it did not include the claimant's subjective

16

complaints. 265 F.3d 1214, 1219 (11th Cir. 2001); Doc. 13 at 8. In what appears to be a common trend, "[w]ith regard to whether the ALJ should have included Plaintiff's alleged symptoms and pain in the hypothetical to the VE, Plaintiff overstates the Eleventh Circuit's holding in *Vega*." *Bailey v. Comm'r of Soc. Sec.*, 2018 WL 1062728, at *8 (M.D. Fla. Feb. 27, 2018). In *Vega*, the ALJ failed to identify the plaintiff's diagnosis of chronic fatigue syndrome from two separate physicians on the sole basis that there is no test to confirm a diagnosis of said condition. 265 F.3d at 1219. The Eleventh Circuit held that a lack of testing does not preclude the physicians from diagnosing the condition, and the ALJ's rejection of the diagnosis was improper. *Id.* at 1219–20. "Because the ALJ ignored the symptoms of CFS, as well as Vega's other subjective complaints regarding symptoms related to CFS, the ALJ did not meaningfully conduct an analysis of the effect of CFS on Vega's ability to work." *Id.* at 1220.

As set forth above, the ALJ considered Dr. Garnett's May 9, 2016, medical source opinion and only assigned it "partial weight" because it "significantly" relied upon Plaintiff's subjective testimony and complaints, it was inconsistent with the Plaintiff's abilities and functioning, and it was internally inconsistent with Dr. Garnett's own treatment records. R. 20, 23. An ALJ's hypothetical "need only include the claimant's impairments, not each and every symptom of the claimant." *Yates*, 706 F. App'x at 593. And "the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Id*. "Because the hypothetical posed included all the credible physical and mental limitations that the ALJ determined were supported by the record, the VE's testimony that [Plaintiff] could perform a significant number of light, unskilled jobs in the

national economy constitutes substantial evidence to support the ALJ's determination." *Pettaway v. Astrue*, 376 F. App'x 889, 892 (11th Cir. 2010).

Here, Nelson does not argue that the ALJ failed to properly identify and address any of Plaintiff's impairments. Rather, Nelson only argues that the ALJ failed to include two to four unscheduled breaks of up to thirty minutes every day in the hypothetical to the VE. In addition to assigning Dr. Garnett's May 9, 2016, medical source opinion only "partial weight" due to the reasons stated above, the ALJ also found that the opinion was "not consistent with the medical evidence when considered in its entirety." R. 20, 23.

The ALJ properly rejected Dr. Garnett's May 9, 2016, medical source opinion and therefore was not required to include the subjective allegations of unscheduled breaks in the hypothetical to the VE. *See Crawford*, 363 F.3d at 1161 ("In any event, the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.")

## VII. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this the 5th day of November, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE